# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lakshmi Balachandra

### DEFENDANTS
Babson College

**(b)** County of Residence of First Listed Plaintiff: **Norfolk**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Norfolk**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Monica Shah and Thomas Miller
Zalkind Duncan & Bernstein LLP, 65A Atlantic Ave,
Boston, MA 02110, 617-742-6020

Attorneys *(If Known)*
Jeffrey Brody and Benjamin Davis
Jackson Lewis LLP, 75 Park Plaza, Boston, MA 02116,
617-367-0025

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [X] 448 Education

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

PRISONER PETITIONS
Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. § 1681, 20 U.S.C. § 2000 et seq.

Brief description of cause:
Discrimination on basis of sex/gender and race, retaliation

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ unspecified

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: February 27, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LAKSHMI BALACHANDRA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) ) Docket No.: |
| BABSON COLLEGE, | ) ) |
| Defendant. | ) ) |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiff Lakshmi Balachandra, a woman of South Asian descent and an Associate Professor of Entrepreneurship at Babson College, is a leading scholar in the field of entrepreneurship. Babson has subjected Balachandra to a discriminatory environment based on her gender and race by allowing a senior white male faculty member to demean and abuse her and to deny her opportunities afforded to white male colleagues. Babson abdicated its responsibility to promptly investigate and respond to her complaints about this treatment, instead retaliating against her for eventually publicizing her concerns. Babson's severe mistreatment of Balachandra reflects the institution's broader perpetuation of a toxic, discriminatory environment that devalues women of color.

2. Balachandra was targeted for mistreatment based on her gender and race by Andrew Corbett during his term as chair of the Entrepreneurship Division at Babson. As chair, Corbett was responsible for much of Balachandra's experience at Babson and her access to opportunities within the institution. She consistently received less time to dedicate to her research and less recognition of her research accomplishments than white and male colleagues. Corbett's discriminatory animus became explicit in personal interactions, in which he yelled at and belittled Balachandra.

3. Balachandra repeatedly reported her concerns to Babson administrators, including the Title IX Coordinator and the head of Human Resources, but the administrators failed to promptly initiate an investigation of her complaints, let alone remedy them.

4. After the discriminatory treatment of Balachandra became public, Babson administrators still did not address it. Instead, they chose to retaliate by disparaging Balachandra to her colleagues and by continuing to deny Balachandra opportunities for which she is highly qualified.

1

5. Despite Balachandra's repeated complaints, Corbett continues to hold a senior role in the College and in the Entrepreneurship Division, including hiring responsibilities for a new faculty position with a focus on women's entrepreneurship.

6. The mistreatment of Balachandra is illustrative of a broader toxic culture of misogyny and racism at Babson that is actively promoted even by the upper echelons of college leadership. Babson's current President, Stephen Spinelli, has recently defended the decision to showcase and honor male donors and alumni who have been credibly accused of sexual harassment or who have made their money in pornography. Decisions like this have contributed to an exodus among the few women of color who hold tenured faculty positions at Babson.

7. Babson's website includes a statement on diversity, including that it is committed to creating "a diverse, multicultural, and inclusive community of highly talented students, faculty, and staff characterized by respect, understanding, and appreciation of the uniqueness and value of all people." The webpage also includes the claim that "[w]e do not tolerate discrimination and this is more than just a statement."

8. Babson also presents itself to the world as deeply invested in promoting women, particularly women of color, as entrepreneurs and leaders. Babson, for instance, established its Center for Women's Entrepreneurial Leadership ("CWEL"), which describes its work as "dramatically increasing the impact of female leaders and their allies in every sector" and "enlightening the global community about the value of women's entrepreneurial leadership." Since 2020, CWEL has hosted the Black Women's Entrepreneurial Leadership Program. In the Spring of 2023, Babson's Executive Education program will feature multiple sessions titled "Leadership Program for Women & Allies: From Opportunity to Action."

9. Balachandra's experiences show that the above claims and initiatives by Babson are empty public performances that are diametrically opposed to the internal culture that the institution deliberately fosters.

10. Babson's ongoing discriminatory treatment of Balachandra and its blatant retaliation against her violate state and federal laws prohibiting discrimination and retaliation.

11. As a result of Babson's wrongdoing, Balachandra has suffered substantial damages, including but not limited to lost career opportunities, economic damages, reputational harm, and emotional distress.

## JURISDICTION AND VENUE

12. This action arises out of Babson's violations of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681), Title VII of the Civil Rights Act (20 U.S.C. § 2000e), M.G.L. c. 151B, and its contractual obligations to Balachandra.

13. Balachandra filed a complaint with the Massachusetts Commission Against Discrimination on June 23, 2022. On November 30, 2022, the Commission granted Balachandra's request to withdraw her case in order to file a civil suit. A dismissal and notice of right to sue was issued by the Equal Employment Opportunity Commission on December 12, 2022.

14. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

15. Venue is proper in this district under 28 U.S.C. § 1391(b), as Babson College is deemed to reside in the District of Massachusetts and all events and omissions giving rise to this action occurred there.

## PARTIES

16. Plaintiff Lakshmi Balachandra currently resides at 86 Plymouth Road in Needham, Massachusetts. She is a tenured Associate Professor of Entrepreneurship at Babson College and is currently on leave while completing a fellowship at the National Science Foundation.

17. Defendant Babson College is a private college in Wellesley, Massachusetts, with a total student body of approximately 3,350 students and approximately 250 instructional faculty.

18. At all relevant times, Babson was a recipient of federal funds and thus subject to Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681).

19. At all relevant times, Babson was an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e(b), and M.G.L. c. 151B §4, §4(4) and §4(4A).

## STATEMENT OF FACTS

### Balachandra's Background

20. Plaintiff Lakshmi Balachandra is a woman of South Asian descent and an expert in the field of entrepreneurship, specifically focusing on the intersection of gender, entrepreneurship, and decision-making.

21. She holds an undergraduate degree from the University of Chicago, an M.B.A. from the M.I.T. Sloan School of Management, and a Ph.D. from Boston College Carroll School of Management.

22. Balachandra joined the Babson faculty as an Assistant Professor of Entrepreneurship in 2012, earning tenure and being promoted to Associate Professor in 2019.

23. Prior to joining Babson's faculty, Balachandra was a visiting assistant professor in Northeastern University's Entrepreneurship & Innovation Department and held a Research Fellowship in Harvard University's Women & Public Policy Program through the Kennedy School of Government.

24. Balachandra has published over 80 works related to her field. Her work has been covered in the media several times, including in the *Boston Globe*, *USA Today*, the *Associated Press*, and *Reuters*. Balachandra has been cited nearly 1,200 times by other researchers.

25. Balachandra has also performed extensive service work for Babson and for the broader profession, including in a faculty-elected position on the Appointments Decision-Making Body Committee for Babson College, as a member of the Committee on Teaching Evaluation and Faculty Assessment for Babson College, as a Senator on the Babson College Faculty Senate as the Entrepreneurship Division representative, and by representing Babson College in a nationally-elected position as a Director-At-Large Board Member for the United States Association for Small Business and Entrepreneurship ("USASBE"), an organization focused on entrepreneurship education.

26. Balachandra has contributed to Babson's CWEL in a variety of important ways. In 2014, she created and led "Capital W," the Boston Women's Venture Capital Summit, in which CWEL partnered alongside other Summit organizers. The conference ran very successfully, receiving significant press and sold-out attendance for three years. Balachandra has also mentored and coached students, presented in research talks, taught in executive education programs and the Women Innovating Now Lab program (a venture accelerator focused on women entrepreneurs), led student programs and information sessions, evaluated applications to the scholars program, and participated in strategy sessions. She also served as the inaugural Diana Institute Research Fellow, where she was selected to be the principal investigator for a sponsored research project for Bank of America focusing on successful women entrepreneurs.

27. In 2021, Balachandra was a semi-finalist for a White House Fellowship and was awarded the American Association for the Advancement of Science ("AAAS") Science and Technology Policy Fellowship in the Federal Government, Executive Branch. In 2021 she was also selected to be the Innovation Fellow at the National Science Foundation's ("NSF") Technology, Innovation, and Partnerships Directorate. She is currently on detail from the NSF to serve in the Department of Commerce's Office of Innovation and Entrepreneurship.

**Babson's Creation of a Hostile Environment for Balachandra**

28. Babson College and its Entrepreneurship Division foster discriminatory work environments for women of color and have a history of ignoring concerns from women and women of color on the faculty. Babson favors white and male faculty and predominantly reserves awards and privileges for them.

4

29. Of the thirty-eight faculty in Babson's Entrepreneurship Division, Balachandra is currently one of only two women of color and the only one with tenure.

30. Since 2021, as a result of Babson's toxic environment for women of color, three women of color faculty have left or announced that they will be leaving Babson. As a result of such departures, Balachandra is one of very few tenured professors who are women of color on Babson's entire faculty.

31. In 2020, Babson created a committee to evaluate the bias against women of color faculty in the student opinion feedback surveys used for faculty promotion and award decisions. After the committee found evidence of bias against women of color, supported by academic research, Babson faculty voted to stop using the instrument. When white faculty requested the instrument be reinstated for faculty promotion decisions and annual evaluations, Babson leadership decided to reinstate the use of these biased feedback surveys despite the clear evidence of the unfairness of these tools and the prior decision to eliminate them.

32. Babson leadership also chooses to promote men who demean and devalue women. After years of complaints from women students about sexist comments in the classroom, Babson terminated Len Green, a trustee who taught a popular course. A year later, however, they re-hired him as an instructor, elevated him to their Academy of Distinguished Entrepreneurs, and even named the gym after him when he made a sizable donation.

33. Similarly, this year, Babson decided to name Marc Bell to their Academy of Distinguished Entrepreneurs, ignoring the numerous complaints of sexual harassment against him and the fact that he has profited from pornography, being involved in businesses like *Penthouse* and now-bankrupt adult dating site FriendFinder.

34. Professor Andrew Corbett, the former Chair of the Entrepreneurship Division, is one of the primary direct perpetrators of the discriminatory work environment faced by Balachandra. He treated Balachandra with a hostility that he did not display towards her white or male peers in the Entrepreneurship Division.

35. Corbett was appointed Chair of the Entrepreneurship Division in 2014, two years after Balachandra began teaching at Babson. As chair, Corbett was responsible for Balachandra's annual performance reviews and for presenting her case for tenure to the Appointments Decision-Making Body. He was also in charge of teaching assignments, leadership assignments, and class scheduling within the Entrepreneurship Division.

36. Corbett is known for losing his temper, especially with women. If women disagreed with him in meetings, he would cut them off and snap at them. He was not aggressive towards male colleagues when he had disagreements with them.

5

37. Corbett never allowed Balachandra to teach anything but required courses in Entrepreneurship despite Balachandra's repeated requests to teach elective courses concerning her expertise, and despite her experience teaching similar courses at the MIT Sloan School of Management and Harvard Business School. By contrast, Entrepreneurship Division members who were white or male were allowed and encouraged to teach and develop new electives pertaining to their expertise.

38. Corbett, like other division chairs at Babson, maintained a practice of sending notices to the Entrepreneurship Division congratulating faculty on their achievements. However, Corbett's emails promoting the work of white or male peers were noticeably more enthusiastic than those emails sharing Balachandra's achievements and the achievements of other female faculty or faculty of color.

39. In annual performance evaluations, Corbett provided subjective assessments of Balachandra's teaching, suggesting for instance that she was "disorganized" or that her teaching was "uneven" and that she was "not a great teacher." He refused to provide any basis for these generalizing comments, which were not informed by any observation of Balachandra in the classroom or review of her teaching materials. The only evidence he consulted was that found in student evaluations, which numerous studies have shown—and which Babson itself has recognized—to be significantly skewed by gender and racial bias.

40. When Balachandra tried to discuss these comments with him, Corbett became hostile and began yelling, stating that Balachandra had no right to question his judgment. He repeated his baseless accusation that Balachandra was "not a great teacher." This type of hostility, which Corbett routinely directed to women subordinates, including Balachandra, was so terrifying that Balachandra began to cry. Because the assertions were false and unfair, Corbett later removed the disparaging comments from Balachandra's review.

41. Also in 2019, Balachandra requested that a morning class be rescheduled to accommodate her childcare responsibilities. Based on her colleagues' experiences and the representations of Babson administrators, Balachandra knew that such a request was reasonable and that such changes were routinely made. When Balachandra met with Corbett to discuss this request, he shouted at her that the schedule was his decision and that he had already accommodated her "enough." He not only refused to make the change, but berated her for reaching out to other administrators rather than communicating exclusively with him.

42. When Balachandra raised this scheduling issue with her Dean, Ken Matsuno, he responded that it was up to the Chair and refused to assist her. He said that he "kn[e]w a little bit about the parenting demands" and suggested that she find a "childcare arrangement."

**Babson Denies Balachandra Opportunities for Research and Leadership**

43. Tenured Babson faculty are routinely granted courses releases in order to have enough time for research and writing and in order to take on leadership roles within the institution.

44. For instance, as compensation for the time and attention that the position requires, the CWEL Faculty Director receives two course releases per year. Similarly, the leadership position for the Foundations of Management and Entrepreneurship (FME) course provides one course release as compensation for time spent on the position.

45. In 2016, Balachandra asked both Corbett and the executive director of the CWEL if she could take over the Faculty Director position of the CWEL. In fact, the previous Faculty Director, Rosa Slegers, had recommended that Balachandra take over the role. Balachandra had already been working with CWEL for multiple years prior to requesting the Faculty Director position, including bringing CWEL significant exposure and donations through the Women's VC Summit that she had organized. Balachandra's research and expertise correspond precisely to the center's focus on women's entrepreneurship.

46. The CWEL Faculty Director position was instead given to a faculty member who had no prior experience or research in the field of women's entrepreneurship.

47. In 2018, the CWEL Faculty Director position again became available. Balachandra again asked for the opportunity to serve in the position. Rather than choose Balachandra, Babson left the faculty director position vacant.

48. Up to 2019, Balachandra had led weekly meetings for junior faculty teaching the FME course. She also created numerous exercises and case studies for the course.

49. Instead of awarding a three-year FME leadership position to Balachandra when it became available in 2019, Corbett gave the position to lecturer Bill LaPoint, a white male who lacked a Ph.D. In comparison with Balachandra's credentials, LaPoint was not a tenure-track faculty member, had much less teaching experience, and lacked a similar history of FME curriculum and course development. LaPoint received a course release for this position.

50. In January of 2020, Balachandra learned that her teaching load would increase the following year to five courses due to her promotion to tenured professor. White male tenured faculty in the Entrepreneurship Division routinely received course releases in order for them to expand their research. Balachandra had not applied for a course release because she had not known at the time of the deadline whether she would receive tenure.

51. Still in January of 2020, Balachandra promptly attempted to get a course release by applying for a research award from the Butler Institute, which had two monetary

awards available for Babson faculty. Balachandra had been given to understand that these awards could be used as course releases, as a male entrepreneurship faculty member had been given this option by Corbett.

52. In addition to his role as Division Chair, Corbett had also been appointed as the faculty director of the Butler Institute. Acting in that capacity, Corbett rejected Balachandra's application, despite the fact that Balachandra was the only faculty member who applied to receive one of the two available awards.

53. In light of her increased teaching load, Balachandra asked to be allowed to teach an elective course in her area of expertise. Corbett refused her request. Balachandra arranged a meeting to discuss this; she had been so intimidated in the past that she asked two colleagues to sit in on the meeting. At the meeting, Corbett again denied her request.

54. To date, despite her stellar research record and service to Babson, Balachandra has never received a leadership position or a course release while teaching at Babson, or been allowed to teach an elective. Such privileges are routinely given to white male faculty in the Entrepreneurship Division.

55. In 2020, as a result of COVID-19 and Babson's switch to online and hybrid delivery, the FME course required a significant redesign. The process began without Balachandra's help, as Corbett selected committee members and did not ask Balachandra to participate, despite the fact that Balachandra was one of the most experienced FME faculty. The team soon asked Corbett to ask Balachandra to join the team, as the team needed her expertise and assistance regarding course design.

56. In the fall of 2020, Corbett asked Balachandra to informally take over coordinating the FME course. Corbett included no offer of a leadership title or compensation as part of his request to Balachandra. Rather, both the title and compensation still went to Lapoint, who had proved unable to carry out the committee's duties.

57. After Balachandra refused to take on the additional work because of the lack of compensation, Corbett demanded that she do so, screaming at Balachandra that she would either need to take on the leadership role related to course design (without compensation) or leave the committee entirely. Given Corbett's blatantly discriminatory conduct, Balachandra felt she had no choice but to choose the latter option.

**Balachandra Reports and Publicizes the Discrimination**

58. In March 2019, Balachandra and her colleague Megan Way, Chair of the Economics Division, met with Babson's Dean of Faculty, Ken Matsuno, to discuss Corbett's abusive behavior towards women. No action was taken after this meeting.

8

59. In November 2019, Balachandra asked to meet with Babson's Title IX Coordinator, Betsy Rauch, about Corbett's behavior. Rauch told Balachandra that little could be done about her concerns and that any complaint could not be anonymous. Because of Rauch's statements, and because Balachandra was about to go up for tenure, a process in which Corbett played a key role, Balachandra was afraid to file a formal complaint under Title IX at that time.

60. In June 2020, Balachandra filed an official complaint with Matsuno as the Dean of Faculty, related to Corbett's mistreatment of women and women of color. Danna Greenberg, another Babson professor, Chair of the Management Division and the Associate Dean of Faculty, accompanied Balachandra to the meeting, where Balachandra highlighted Corbett's conduct in yelling at women and women of color faculty members and his favoritism of white and male faculty members. Balachandra identified faculty members that would be willing to come forward and share their experiences related to Corbett's hostile behavior, including Megan Way, Brad George, Julie Levenson, Kevin Bruyneel, and Stephen Deets, all of whom have tenure and have worked at Babson for many years.

61. Balachandra also shared with Matsuno that Corbett screamed at a female lecturer, Mary Gale, in an Entrepreneur Division meeting. After the meeting, Gale and others noted that Corbett needed "anger management" and highlighted that this was part of a pattern of behavior by Corbett, as he often diminished the accomplishments of women of color faculty in the Entrepreneurship Division.

62. After meeting with Matsuno to report Corbett's pattern of behavior, Balachandra filed a formal complaint about Corbett's mistreatment of women and women of color with Donna Bonaparte, the head of Babson College's Human Resources Department.

63. Despite such a litany of formal complaints, Babson never formally investigated Balachandra's complaints related to Corbett, nor did it promptly and adequately address his discriminatory conduct.

64. In other divisions at Babson, at least two female chairs have been swiftly removed in response to faculty complaints about their leadership. Unacceptable behavior by a male division chair like Corbett is meanwhile tolerated.

65. In 2020, Balachandra was invited to speak at the International Labor Organization. For this presentation, she discussed the research that she was conducting for a project with Bank of America, including her recent research as to why homogenous leadership teams harm decision-making. As part of the presentation, she included a picture of Babson's then-leadership as an example of a homogenous (all-male) leadership team.

66. A few weeks after the presentation, she received an intimidating email from her Dean, Matsuno, to whom she had recently reported her concerns of discrimination. Matsuno stated that he received the presentation "from someone" and found the use of the

picture to be hurtful. He also stated that he thought the presentation was intended to make him feel guilty for being a man in a leadership position. He demanded that Balachandra "be fair" to the leadership team and Babson.

67. On September 27, 2021, the *Boston Globe* published an article by Balachandra highlighting the gender and race discrimination that she was experiencing. The article was entitled, "There is No Way the Brown Woman Could Replace the White Guy: A Babson Professor Reflects on the Challenges of Being an Outspoken Indian Woman in Academia." The article discussed her experience of bias from students in the classroom at Babson and the unfair staffing demands placed on her in connection with the FME course redesign. The article named no specific students or faculty members, instead referring to "Babson leadership" generally.

## Babson Retaliates Against Professor Balachandra

68. On September 27, 2021, Matsuno emailed Balachandra to express his displeasure about the *Globe* article. Despite his failure to recognize or understand Balachandra's serious complaints of discrimination against her, Matsuno took it upon himself to explain to her that the article "was not a useful way" to discuss discrimination. In response, Balachandra emailed him (copying Donna Bonaparte) to engage in a discussion related to Balachandra's prior reporting of Corbett's treatment. Balachandra explained that she had tried to use mechanisms within Babson, including Title IX and HR, but that nothing had changed.

69. Matsuno subsequently sent an email to the entire Babson community falsely contradicting Balachandra's claims and stating that he would work with her directly to address her concerns. Matsuno never fulfilled this promise.

70. On September 30, 2021, the new chair of the Entrepreneurship Division, Donna Kelley, brought up the article at the Entrepreneurship Division monthly meeting, where all Entrepreneurship Division faculty except Balachandra were present. As Kelley and Babson leadership were aware, Balachandra was in Washington, D.C. on her fellowship at the National Science Foundation. Despite Balachandra's previous, consistent reports of how she was being treated by Babson leadership, Kelley informed Balachandra's colleagues that disagreed with the article and openly criticized Balachandra for writing it.

71. A week later, the Associate Dean of Faculty, Danna Greenberg, made a special visit to the FME faculty meeting to comment on Balachandra's article. Greenberg blamed Balachandra for calling out faculty and harming their reputations. Balachandra was again not in attendance, as she was on leave, so she had no opportunity to present her perspective to her co-workers in the meeting.

72. Babson leadership had failed to talk to Balachandra before criticizing her, which harmed her reputation at the school. After the meeting, Balachandra received messages and phone calls from her colleagues alerting her to the highly

10

"inappropriate" nature of Greenberg's comments. Several faculty members expressed to Balachandra that they could not believe that Greenberg had made such comments against Balachandra in the meeting. At least two faculty members, Professors Conwell Worthington and Angela Randolph, went to speak with Greenberg after the meeting to express the inappropriate nature of her comments.

73. When Balachandra emailed Kelley to protest being discredited in front of her colleagues, Kelley responded that she and Greenberg wished to discuss the matter with Balachandra. Balachandra asked them to be more specific about what they wished to discuss. Kelley and Greenberg did not respond.

74. Balachandra has experienced severe emotional pain and anguish as a result of Babson's response, especially because the response reinforced the hostile environment that was the original subject of the article.

75. Babson has also attempted to damage Balachandra's reputation among her peers. For instance, Conwell Worthington, who had served as Balachandra's teaching partner, was instructed by Danna Greenberg not to use Balachandra as a reference when applying for a full-time position in a different area of Babson because Balachandra was "too much of a lightning rod" at the school.

76. Babson also retaliated against Balachandra by continuing to deny her opportunities for research and leadership, despite her qualifications and increased seniority.

77. In 2021, the FME course leadership position again became available. Corbett once again denied Balachandra the opportunity to lead the team. Instead, Babson gave the position to Angela Randolph, a faculty member who was not tenured.  By Babson's own admission, in their position statement submitted in proceedings before the Massachusetts Commission Against Discrimination, "the position is generally not given to pre-tenure faculty, based on the belief that their time is better devoted to research and publication."

78. Initially, Corbett had approached Brad George, a white male faculty member, for the FME course leadership position.  Upon information and belief, Babson changed course and instead selected a junior faculty member, contrary to past practice, in order to deflect Balachandra's claims that Babson engaged in discrimination against women of color faculty.

79. In January 2022, Balachandra learned that she had been turned down for the Debi and Andy Butler Term Chair, for which she had applied and which would have provided course releases. The recipient was a white woman hired by Babson in 2017.

80. In February 2022, Balachandra learned that she had also been turned down for Babson's Research Scholar Award and its Presidential Scholar Award, for which she had also applied and which would also have provided course releases. Matsuno made

11

the decision to deny Balachandra the awards. None of the recipients were women of color.

81. Babson continues to require Balachandra to teach five courses, a course load that is unusually large for a tenured faculty member of her research productivity and service levels at the institution and in the academy.

82. In May 2022, Balachandra asked to meet again with Betsy Rauch, Babson's Title IX Coordinator, to file a formal Title IX complaint, as a result of the continued discriminatory and now retaliatory conduct she faced. Rauch then met with Balachandra.

83. On August 22, 2022, Rauch emailed Balachandra to give her a determination on whether her Title IX claim would be pursued. Rauch recounted that she understood Balachandra to be claiming that she had been unfairly denied professional opportunities because of her gender. Rauch stated that did not believe that these concerns fell "under the scope and jurisdiction of Title IX" or of Babson's Gender-Based Misconduct Policy and failed to recognize her retaliation claims.

84. Rauch's conclusion was directly contrary to the law and Babson's policies. Title IX reads, in pertinent part: "No person in the United States shall, on the basis of sex … be subjected to discrimination under any education program or activity receiving Federal financial assistance." The most recent version of Babson's Gender-Based Misconduct Policy was issued on August 18, 2022, four days before Rauch's email. It states in part that its "scope and jurisdiction ... are more expansive than the scope and jurisdiction of Babson's Title IX Policy" and that gender-based misconduct is a "broad term" that includes "sex discrimination." It also states that Babson "is committed to preserving a learning and working environment that values diversity and inclusion" and that "[g]ender-based misconduct is one of the most serious violations of the College's community values."

85. Despite these clear statutory and policy mandates, no investigation of Balachandra's claims was initiated.

86. In a tacit admission that Balachandra's claims were highly worthy of investigation (Rauch's baldly inaccurate statements notwithstanding), Babson has undertaken to investigate them using an outside investigator, Tracey Spruce, who reports to Babson's General Counsel's office. The results of this investigation will not be made public or shared with Balachandra. Babson appears to have resorted to this tactic in order to avoid guaranteeing Balachandra her rights under Title IX or Babson's own policies, and so to conceal the evidence of the investigation from Balachandra and the Babson community.

87. In their position statement filed before the Massachusetts Commission Against Discrimination, Babson belittled Balachandra's serious complaints, referring to them as "relatively inconsequential concerns" and "minor setback and disagreements." This

patronizing and disingenuous language reveals the attitude with which Babson is pursuing their ongoing secret investigation.

88. Babson's position statement submitted to the Massachusetts Commission Against Discrimination also itself exemplified the continuing pattern of sexist treatment of and retaliation against Balachandra. Babson falsely criticized her being unable to "work collegially" and having an "antagonistic demeanor." Research shows how even high-ranking female professionals are stereotyped as "angry" and given lower status because of it, especially when they are women of color. See Victoria Brescoll & Eric Uhlmann, *Can an angry woman get ahead? Status conferral, gender, and expression of emotion in the workplace*, 19 Psychological science 268 (2008); Ashleigh Rosette et al., *Race matters for women leaders: Intersectional effects on agentic deficiencies and penalties*, 27 The Leadership Quarterly 429 (2016).

89. Babson's resort to classic sexist tropes to demean Balachandra in an official agency filing is revelatory of their lack of good faith in addressing her concerns. Moreover, Babson's unfounded criticism of Balachandra's "collegiality" lies in stark contrast to its elevation of Corbett, who screams at and belittles female faculty, yet has faced no discipline and continues to exert power at the institution.

90. Though Balachandra is currently only on leave for a temporary fellowship, Babson has publicly sought to hire a full-time senior assistant or associate-level faculty member in the Entrepreneurship Division with an interest in "women's entrepreneurship." This job description closely corresponds to Balachandra's role. No other faculty members that fit this description have left Babson since Balachandra went on leave to do a fellowship and there are no scheduled retirements in the Entrepreneurship Division. Balachandra and many of her colleagues believe that Babson intends to hire someone to replace Balachandra, despite the fact that she is a tenured professor and a noted figure in her field. In undertaking this search, Babson has failed to follow standard procedures, did not seek faculty input, and did not include Balachandra, even though it is a search for faculty member in her specific research area.

91. Corbett remains employed by Babson as a "Distinguished Professor" with a named chair and as faculty director of the Butler Institute. He is a co-chair of the search committee to hire for the new faculty search in the area of women's entrepreneurship, despite the fact Corbett has engaged in sexist and abusive treatment of women faculty, including Balachandra. Babson's continued elevation of Corbett and refusal to punish him despite his documented sexist conduct is indicative of Babson's hostile environment toward women of color faculty.

92. Babson's actions and omissions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress from the hostile environment and retaliation. All damages continue to date.

## COUNT I
### Violation of Title IX – Sex & Gender Discrimination

93. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

94. Defendant Babson is a recipient of federal funding and is thus subject to Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681).

95. Under Title IX, Babson is prohibited from discriminating against its faculty on the basis of their sex and gender.

96. Babson's actions and omissions described above, including the denial of opportunities for research and leadership that it afforded to others, constitute sex and gender discrimination against Balachandra in violation of Title IX.

97. Babson's actions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT II
### Violation of Title IX – Hostile Environment

98. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

99. Pursuant to Title IX, Babson is prohibited from discriminating against its faculty on the basis of their sex by permitting the creation of a hostile environment for female faculty.

100. Balachandra was subjected to a hostile environment as a Babson professor.

101. Babson had repeated notice of the hostile environment under which Balachandra suffered, but failed to investigate or remedy it.

102. In its failure to promptly and adequately remedy a hostile environment, Babson was deliberately indifferent to Balachandra's rights.

103. Babson's actions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT III
## Violation of Title IX – Retaliation

104. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

105. Pursuant to Title IX, Babson is prohibited from retaliating against a faculty member who makes a complaint of sex discrimination at Babson.

106. Balachandra engaged in protected activity by alerting Babson administrators about the discriminatory and hostile actions of her colleagues, including Corbett, and by speaking and writing publicly about her discriminatory work environment after she received no relief via internal channels.

107. Babson then disparaged Balachandra to her colleagues and denied her research and leadership opportunities for which she was highly qualified and deserving.

108. These adverse actions taken by Defendant Babson constitute retaliation against Balachandra in violation of Title IX.

109. Babson's actions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT IV
## Violation of Title VII – Sex and Race Discrimination

110. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

111. Babson, through the acts and omissions described above, including the denial of opportunities for research and leadership that it afforded to others, has unlawfully discriminated against Balachandra on the basis of her sex and race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2.

112. Babson's actions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT V
## Violation of M.G.L. c. 151B

113. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

114. Babson's actions and omissions set forth above, including the denial of opportunities for research and leadership that it afforded to others, constitute discrimination against Balachandra on the basis of her sex, gender, and race in violation of M.G.L. c. 151B.

115. Babson's actions and omissions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT VI
### Violation of M.G.L. c. 151B – Retaliation

116. Balachandra repeats and realleges the allegations above as if fully set forth herein.

117. Balachandra engaged in protected activity by alerting Babson administrators about the discriminatory and hostile actions of her colleagues, including Corbett, and by speaking and writing publicly about her discriminatory work environment after she received no relief via internal channels.

118. Babson then disparaged Balachandra to her colleagues and denied her research and leadership opportunities for which she was highly qualified and deserving.

119. Babson's conduct constitutes retaliation against Balachandra in violation of M.G.L. c. 151B.

120. Babson's actions and omissions have caused substantial damage to Balachandra, including lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT VII
### Breach of Contract

121. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

122. At all relevant times, Babson and Balachandra were parties to a valid contract governing Balachandra's employment, including the provisions in Babson's Faculty Handbook and Gender-Based Misconduct Policy, which were incorporated into the contract by reference.

123. Babson's Gender-Based Misconduct Policy bans sex discrimination, hostile environment sexual harassment, and retaliation. It explicitly applies to conduct that violates Title VII of the Civil Rights Act of 1964 or M.G.L. c. 151B.

124. Babson's Gender-Based Misconduct Policy states when a complaint is received, the Title IX Coordinator shall determine whether there is "reasonable cause" to pursue the complaint and, if there is, shall initiate a formal investigation.

125. Balachandra made a formal complaint about conduct to which Babson's Gender-Based Misconduct policy applied, but Babson did not initiate an investigation.

126. That there was "reasonable cause" to pursue Balachandra's complaint is shown by the fact that Babson is currently investigating it through a secret, non-transparent process.

127. Babson's failure to initiate a formal investigation of Balachandra's complaint, in accord with its Gender-Based Misconduct Policy, constituted a breach of its contract with Balachandra.

128. As a result of Babson's actions and omissions, Balachandra has suffered lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

## COUNT VIII
## Breach of the Covenant of Good Faith and Fair Dealing

129. Plaintiff Balachandra repeats and realleges the allegations above as if fully set forth herein.

130. At all relevant times, Babson and Balachandra were parties to a valid contract governing Balachandra's employment, including the provisions in Babson's Faculty Handbook and Gender-Based Misconduct Policy, which were incorporated into the contract by reference.

131. Good faith and fair dealing are implied in all contracts. Neither party to a contract shall do anything that will have the effect of destroying or injuring rights of another part to receive the fruits of a contract.

132. In breach of the covenant of good faith and fair dealing, Babson purposefully, willfully and knowingly prevented Balachandra from enjoying the rights and privileges of her position.

133. Instead, Babson actively fostered an environment in which it was impossible for Balachandra to thrive and be productive in her teaching and research as envisioned by her employment contract.

134. As a result of Babson's actions and omissions, Balachandra has suffered lost compensation, lost professional opportunities and benefits, reputational harm, and emotional distress. All damages continue to date.

WHEREFORE, Plaintiff Balachandra respectfully requests that this Court:

1. Award Plaintiff Balachandra compensatory and punitive damages in an amount to be determined at trial;

2. Award Plaintiff Balachandra the reasonable costs and expenses of this action and reasonable legal fees as provided by applicable law;

3. Award Plaintiff Balachandra all other damages as permitted by applicable law;

4. Grant all such other relief, including injunctive relief, as this Court deems equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

    Respectfully submitted,
    LAKSHMI BALACHANDRA,
    By her attorneys,

    /s/ Monica R. Shah
    MONICA R. SHAH (Mass. Bar. No. 664745)
    THOMAS M. MILLER (Mass. Bar. No. 708133)
    ZALKIND DUNCAN & BERNSTEIN LLP
    65a Atlantic Avenue
    Boston, MA 02110
    (617) 742-6020 (telephone)
    (617) 742-3269 (fax)
    mshah@zalkindlaw.com
    tmiller@zalkindlaw.com

Dated: February 27, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all attorneys of record by electronic filing on the above date.

    /s/ Monica R. Shah
    Monica R. Shah