UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————— ) | |
| LAKSHMI BALACHANDRA, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 1:23-CV-10456-JEK |
| ) | |
| BABSON COLLEGE, ) | |
|     Defendant. ) | |
| ———————————————— ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCLOSURE OF COMPENSATION INFORMATION**

Plaintiff Lakshmi Balachandra ("Balachandra") submits this memorandum of law in support of her motion to compel Defendant Babson College ("Babson") to produce compensation information for the five other faculty members who, like Balachandra herself, currently hold or have recently held the rank of Associate Professor in Babson's Entrepreneurship Division. This modest, narrowly tailored request seeks information that is highly relevant to both liability and damages for Balachandra's claims of sex and race discrimination by Babson.

**FACTUAL BACKGROUND**

Lakshmi Balachandra is a South Asian woman and an Associate Professor of Entrepreneurship at Babson College. This case concerns how Babson has discriminated against her based on her race and gender, including through an inequitable distribution of resources and opportunities that has impacted her ability to pursue her research and build her public profile as a scholar. In particular, Babson has denied her course releases, research funding, and leadership opportunities that it has awarded to her white and male peers on the faculty. (Doc. 1, Compl. ¶¶ 43-57, 76-81.) In order to value these disadvantages to her career for the purpose of this

litigation, Balachandra is entitled to compensation information for her faculty peers in her own department. Despite exhaustive efforts by Balachandra to narrow and explain the basis for her requests, Babson has refused to provide this critical discovery.

On June 16, 2023, Balachandra served her first set of discovery requests on Babson, which included an interrogatory and document request related to faculty salary information. Interrogatory No. 4 asked: "For each academic year since the academic year beginning in 2012, identify all faculty in the Entrepreneurship Division at Babson during that year, and state the race and gender of each person, their title at Babson in that year, and their compensation, including salary and any other benefits." Almost four months later, on October 6, 2023, Babson partially answered the interrogatory, but refused to provide any compensation information, objecting that the interrogatory was "overly broad, unduly burdensome, not relevant to any party's claim or defense, and not proportional to the needs of the case," in particular because Balachandra did "not allege she was the victim of a race or gender-based pay disparity." *See* Exhibit A, Babson College's Objections & Answers to Plaintiff's First Set of Interrogatories, Answer to Interrogatory No. 4. Babson also objected to a related request for production of documents generally relating to faculty compensation at the institution. *See* Exhibit B, Babson College's Amended Responses to Plaintiff's Requests for Production of Documents, Response to Request No. 8. The two sides then engaged in extensive discussions to resolve the dispute:[1]

- On December 11, 2023, undersigned counsel responded in writing to Babson's objection to Interrogatory No. 4, stating that the information was relevant "because a central issue in the case is inequitable teaching loads for Babson faculty" and noting that course

---

[1] Due to the large number of documents involved, most of the correspondence referenced below has not been attached as exhibits to this Motion. Undersigned counsel are, however, ready to produce any of the documents referenced that would be helpful to the Court.

releases "have a monetary value." Counsel for Babson responded in writing on January 12, 2024, maintaining its objection with respect to compensation information. Babson's counsel called the request for information over an eleven-year period "invasive and unnecessary" and denied that course releases were a "financial benefit" to the faculty members receiving them.

- On January 30, 2024, undersigned counsel agreed to narrow its request to just six years (2018 to the present) of compensation information. Undersigned counsel further agreed to restrict the request to tenured and tenure-track faculty, rather than all faculty in the Entrepreneurship Division. Undersigned counsel noted that "whether course releases are a form of compensation" was "an issue in dispute." On February 13, 2024, counsel for Babson responded that the objection was maintained, given the lack of "a coherent theory of relevance."

- Undersigned counsel responded in writing on February 23, 2024, noting specific evidence for the monetary value of course releases, including deposition testimony from former Babson Vice Provost and current Entrepreneurship professor Candy Brush. *See* Exhibit C, Excerpt of Brush Deposition. On March 1, 2024, counsel for Babson responded in writing to maintain its objection, stating that courses releases had an "internal monetary value" to the college but from the perspective of faculty merely "permitted them to allocate [their] teaching, scholarship, and service contributions somewhat differently."

- The two sides conferred by telephone with respect to Interrogatory No. 4 and other discovery issues on March 28, 2024. Counsel for Babson agreed to discuss the issue with

their client. On April 8, 2024, counsel for Babson stated by email that the objection was

maintained.

- On June 4, 2024, Balachandra proposed to limit the scope of her request to salary

  information for other members of the Entrepreneurship Division who held the same rank

  as herself, i.e. Associate Professor, from the 2020-21 academic year forward. *See* Exhibit

  D, Email from Miller to Davis dated June 17, 2024. This group would comprise (for

  some or all of this period) Brad George, Erik Noyes, Yasuhiro Yamakawa, Matt Allen,

  and Julian Lange. Alle these faculty members are men, and none are South Asian. On

  June 6, 2024, Babson's counsel stated by email that Babson was "maintaining its long-

  standing position and declining to provide the information." *Id*.

- The two sides conferred a final time by telephone on June 19, 2024, and agreed that no

  further progress could be made towards a resolution of the dispute.

**ARGUMENT**

Under Fed. R. Civ. P. 37(a)(3)(B), a party may move to compel an answer when another

party "fails to answer an interrogatory submitted under Rule 33." Such interrogatories may relate

to any matter that may be inquired into under Rule 26(b)," that is, "any nonprivileged matter that

is relevant to any party's claim or defense and proportional to the needs of the case," whether

ultimately admissible. Fed. R. Civ. P. 33(a)(2), 26(b)(1). "As a general matter, relevancy must be

broadly construed at the discovery stage, that is, information is discoverable if there is any

possibility it might be relevant to the subject matter of the action." *Whittingham v. Amherst Coll*.,

164 F.R.D. 124, 124–27 (D. Mass. 1995).

It is standard in employment cases for salary information for similarly situated

comparators to be discoverable, including in cases specifically involving faculty in higher

education. *See Sacks vs. Texas S. Univ.*, No. 18-CV-3563, 2020 WL 11028060 (S.D. Tex., Apr. 29, 2020) (ordering production of W2s for all male law professors over five-year period); *Luck vs. Univ. of San Diego*, No. 13-CV-3088, 2014 WL 12461323 (S.D. Cal., Sept. 15, 2014) (compelling salary and benefits information for every full professor in university's law and business schools); *Bird vs. Regents of New Mexico State Univ.*, No. 08-CV-0851, 2010 WL 11492346 (D.N.M., May 13, 2010) (compelling five years of salary information for all tenure-track faculty in department); *Zhou vs. Pittsburgh State Univ.*, No. 01-CV-2493, 2002 WL 31870565 (D. Kan., Feb. 5, 2003) (ordering production of three years of salary data for faculty in music department where plaintiff taught). Here too Balachandra is entitled to information about how faculty members similarly situated to herself are compensated.

Balachandra has alleged both sex and race discrimination by Babson, under both federal and state law. How Babson compensates similarly situated employees of a different sex and race is relevant to proving these claims because inequalities in compensation can constitute discrimination under Title VII or Chapter 151B. *See Mundell v. Acadia Hosp. Corp.*, 92 F.4th 1, 24 (1st Cir. 2024) (noting long-settled law that "a party can suffer employment discrimination because of a wage disparity and bring [a claim] for damages under a discrimination statute" like Title VII); *Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 91, 101 (2009) (evidence that plaintiff's base pay was significantly less than all male pharmacy managers in region supported inference of discriminatory animus). Babson admits that faculty salaries at Babson are set individually at the discretion of administrators, with the "policy objective" that all salaries for satisfactorily performing faculty member should eventually be "at, or above," a "benchmark," but does not set limitations or ranges beyond that threshold salary. *See* Exhibit E, Babson College's Objections and Answers to Plaintiff's Second Set of Interrogatories, Answer to Interrogatory No. 21. This

opaque and non-transparent system for setting faculty compensation may result in significant disparities among faculty at the same rank based on subjective criteria. *See Lilly v. Harris-Teeter Supermarket*, 842 F.2d 1496, 1506 (4th Cir. 1988) (recognizing that subjective criteria in employment decisions may raise inference of discrimination); *Harrison v. Boston Fin. Data Servs.*, 37 Mass. App. Ct. 133, 138-39 (1994) (subjective mechanisms are closely scrutinized "because of their capacity for masking unlawful bias"). The information sought clearly falls within the "broadly construed" notion of relevancy applicable at this stage of the proceedings. *See Whittingham*, 164 F.R.D. at 124–27.

The compensation information sought is particularly relevant to assessing Balachandra's damages in lost compensation. One of her central allegations in this case is that Babson has consistently rewarded her white and male peers with course releases and leadership opportunities that have reduced their teaching loads and given them more research time and public exposure, enhancing their profile at a critical period for the development of their academic careers. Andrew Corbett, the Chair of the Entrepreneurship Division at Babson during most of the events at issue in this case, testified at his deposition that an academic's reputation was "more directly affected" by research than by teaching and that it was therefore "[a]bsolutely" important for faculty with a research focus to get course releases to focus on their research. *See* Exhibit F, Excerpts of Corbett Deposition. In addition to this reputational impact, the monetary value of a course release is tied to a particular professor's salary. Professor Brush, former Vice Provost of Global Entrepreneurship and a previous chair of the Division of Entrepreneurship testified that course releases are evaluated as a percentage of the professor's salary and benefits. *See* Exhibit B. She specifically testified that, "That's just the way it's always been" and that it was based on "a standard percentage given by the Dean of Faculty Office. *Id.* Balachandra is entitled to know the

monetary value of the privileges accorded to her white or male peers, and she cannot know this without information about their total salary.

Balachandra's request has also been substantially narrowed based on conversations with Babson's counsel. She now seeks compensation information for only five faculty members, from 2020 to the present (that is, for five years, or for the period that each faculty member was employed by Babson if shorter). During this period, Balachandra and the five faculty members all held the same academic rank (Associate Professor) in the same division (Entrepreneurship) at Babson. All six held essentially the same academic credentials relevant to their work at Babson (i.e., a Masters in Business Administration and a doctoral degree).[2] Courts have declined to compel the disclosure faculty salary data where the individuals are obviously not comparable, e.g. holding different faculty ranks and different terminal degrees. *See Plump vs. La Salle Univ.*, No. 19-CV-4579, 2020 WL 3250532 (E.D. Pa., June 15, 2020). That is not the case here.

Finally, to the extent that Babson has concerns about the confidentiality of faculty compensation information, a Confidentiality Stipulation and Protective Order has already been entered in this case and will adequately address such concerns. (Dkt. 20.) Balachandra will not contest the designation of any material submitted as confidential.

## CONCLUSION

For the reasons given above, this Court should grant Plaintiff Lakshmi Balachandra's Motion to Compel Disclosure of Salary Information.

---

[2] Julian Lange retired from Babson in 2023, and information about his academic credentials is not publicly available.

Respectfully submitted,
LAKSHMI BALACHANDRA,
By her attorneys,

/s/ Monica R. Shah
MONICA R. SHAH (Mass. Bar. No. 664745)
THOMAS MILLER (Mass. Bar. No. 708133)
ZALKIND DUNCAN & BERNSTEIN LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
mshah@zalkindlaw.com
tmiller@zalkindlaw.com

Dated: June 25, 2024

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon all attorneys of record by electronic filing on the above date.

/s/ Thomas M. Miller
Thomas M. Miller